# WALTER CRAMOND v. AFL-CIO AND OTHERS.

126 N. W. (2d) 252.

January 24, 1964—No. 38,893.

*George C. Gubbins, Jr.,* for appellant.
*Robert W. Mattson,* for respondents.

ROGOSHESKE, JUSTICE.

Plaintiff appeals from an order denying a motion for a temporary injunction.

Plaintiff commenced an action for damages and equitable relief upon a claim that he was wrongfully removed from the office of president of a labor-union council. During pendency of the action, plaintiff sought a temporary injunction to restrain the holding of an election for new officers until his action was tried. Upon plaintiff's motion, an order to show cause and temporary restraining order was issued ex parte. After a hearing, the restraining order was discharged and a temporary injunction denied.

Plaintiff's motion was submitted upon the allegations of his verified complaint and essentially identical affidavits of himself and his counsel, which were initially presented in support of his ex parte application for the order to show cause. Although additional facts were asserted during the arguments of counsel, which have been transcribed and appear as part of the record, these facts were not supported by affidavits. There is no indication that such facts, so far as they are undisputed, were intended by the parties to be stipulated facts to be considered by the court in reaching a decision. Accordingly, in reviewing the order denying a temporary injunction, we are limited to a consideration of only such facts as appear from the verified complaint and affidavits.[1]

These pleadings disclose that on January 25, 1961, plaintiff was elected president of defendant Minneapolis Central Labor Union Council (hereinafter CLUC) for a 2-year term. The CLUC is a voluntary, unincorporated association composed of locals of national and international labor unions and organizing committees affiliated with the American Federation of Labor and the Congress of Industrial Organizations (hereinafter AFL-CIO). Defendant CLUC is one of the subordinate local central bodies chartered by the AFL-CIO and gov-

---

[1]Minn. St. c. 585; Rule 65, Rules of Civil Procedure. See, Ekeberg v. Mackay, 114 Minn. 501, 131 N. W. 787, 35 L. R. A. (N.S.) 909; Mathwig v. Olson, 190 Minn. 262, 251 N. W. 518; Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814.

erned by the parent body's constitution and rules promulgated thereunder.[2]

In response to allegations of financial mismanagement and violations of the constitution and rules of the AFL-CIO, George Meany, president of the parent body, under authority claimed to be vested in him, ordered a hearing into the affairs of CLUC. The hearing was conducted by his personal representative on April 5, 1961, following "notice of the time, place and nature of this hearing * * * to the officers and membership" of the CLUC. After the hearing, on July 7, 1961, Mr. Meany rendered his written decision based upon the report and recommendations of the hearing officer. The decision suspended the charter of CLUC and placed its affairs and properties under F. J. Pat McCartney as trustee with power to assume charge of the affairs and business of CLUC and to suspend any and all officers and appoint temporary officers in accordance with Rule 26(d), Rules Governing Local Central Bodies. The appointed trustee immediately suspended all officers of CLUC, but on the same day, or within a few days, he reinstated all suspended officers except plaintiff.[3] Plaintiff alleges that, in accordance with acknowledged rules of the local and parent bodies, he exhausted his administrative remedies by appealing without success to the executive council of the AFL-CIO in October 1961 and finally, in December 1961, to the national convention of the AFL-CIO.

Thereafter, on April 4, 1962, the complaint referred to was served and filed. It further alleged that the order suspending the charter and all actions thereunder were in violation of the AFL-CIO Constitution, the rules and regulations of its executive council, the rules governing local central bodies, and the constitutional requirements of due process. He specifically alleged that, under the constitution and rules of the

---

[2]The district court file contains copies of the AFL-CIO Constitution and of Rules Governing Local Central Bodies, which were submitted by defendants in support of a prior motion to dismiss the main action. Although not attached to his complaint, plaintiff incorporates the provisions thereof by reference. Presumably, the CLUC also has its own constitution and by-laws, but no copy or provisions thereof appear as a part of the file or record.

[3]The file discloses that the office of president remained open for a time until Robert Gomsrud was appointed temporary president by the trustee.

parent body, the authority to discipline a subordinate body and its elected officers is vested in the executive council of the AFL-CIO and cannot be delegated to the president; that any rule purporting to delegate authority to the president to make disciplinary decisions or orders was in conflict with the AFL-CIO Constitution and, therefore, null and void; that the authority can be exercised only upon a two-thirds majority vote of the executive council and no such vote was procured; that only in an emergency can the AFL-CIO president act independently of the council;[4] that the evidence produced at the hearing did not establish that an emergency existed in the affairs of CLUC; that, in violation of due process and of Rule 26, Rules Governing Local Central Bodies, plaintiff was not given written notice of the charges a reasonable time prior to the hearing so as to enable plaintiff, CLUC, or its other officers to prepare their defense to the charges; that, at the hearing and subsequently, plaintiff was not permitted to appear by counsel, to confront or cross-examine witnesses against him, and to secure a transcript of the proceedings; that the evidence submitted before the hearing officer did not substantiate the charges made but compelled a finding that all of plaintiff's actions were duly authorized by the executive board and the delegate assembly of the CLUC.

Upon this complaint, plaintiff demanded (1) $100,000 damages, (2) an injunction restraining enforcement of the order suspending the charter, and (3) reinstatement to his elected office.[5]

On August 4, 1962, 4 months after the action was begun, plaintiff learned from the Minneapolis Labor Review, the official publication of defendant CLUC, of two forthcoming meetings of the delegates of CLUC called for the purpose of nominating and electing new officers, including a president. The meeting to nominate was scheduled for August 8, 1962, and to elect, for August 22, 1962. This information was part of a progress report written by F. J. Pat McCartney, trustee, which also revealed that "[s]uch officers will serve in office in accord-

---

[4]Authority to act in an emergency exists by virtue of Rule 26(c), Rules Governing Local Central Bodies.

[5]Although plaintiff's prayer for relief did not request reinstatement as president, the body of the complaint discloses a request for such relief.

ance with the time specified in the Constitution as amended July 11, 1962."[6]

On August 8, 1962, plaintiff secured the order to show cause and temporary restraining order, and on August 21, 1962, the restraining order was discharged and the motion for a temporary injunction denied.

In denying the motion, the trial court explained that it was not authorized nor required to interfere with the internal affairs of a voluntary organization without a clear showing that the rights of plaintiff could not be protected otherwise, and that plaintiff has an adequate remedy at law and has failed to demonstrate any "legitimate advantage" to keeping the office of president open during the pendency of his action since he is as effectively out of the office whether it is kept open or filled by election. Furthermore, the trial court stated, even assuming that the order suspending the charter and removing plaintiff from office is void, appointment of a temporary president by the trustee as well as election of a president during the trusteeship would likewise be void. The trial court concluded, therefore, that the contemplated election would neither increase the plaintiff's injury nor prevent reinstating him to his office.

A court may grant injunctive relief under Minn. St. 585.02 when it is apparent that the rights of a party will be irreparably injured before a trial on the merits is reached or where it is shown that the relief prayed for in the main action will be ineffectual or impossible to grant. It must be borne in mind that injunctive relief is a remedy to

---

[6]These facts are presented by the affidavits of plaintiff and his counsel. In plaintiff's brief it is claimed that the published notice also included the following paragraph:

"ELIGIBLE TO RUN FOR OFFICE. All accredited delegates meeting the above requirements will be eligible to run for office, or other elective post, with the exception of any officer or former officer whom the AFL-CIO removed from office and was not reappointed at the time the Minneapolis C.L.U.C. charter was lifted (July, 1961) by the AFL-CIO * * *."

For reasons not apparent, neither the eligibility requirements nor plaintiff's disqualification to stand for election were presented either by affidavit or by the complaint.

protect preexisting rights and a court cannot create a right and then enforce it by an injunction.

We are of the opinion, and numerous cases so hold,[7] that a court may restrain or compel action by officers and members of a voluntary, unincorporated association such as a labor union. Such power may be exercised even though it constitutes interference with the internal affairs of an association. However, courts should be hesitant to so interfere unless there is a clear showing that it is necessary to protect the rights of complaining members.

A temporary injunction may be granted in the discretion of the court when the impending conduct threatens real, substantial, and irreparable injury to a party's rights which are the subject of the action and such injury would tend to make a judgment in his favor ineffectual.[8] In deciding whether to grant or deny a temporary injunction, the trial court must balance the relative harm to the parties involved by the allowance or disallowance of such relief.[9] A lower court's ruling on a motion for a temporary injunction is largely an exercise of judicial discretion and the sole question presented on appeal is whether there was a clear abuse of such discretion by the trial court by a disregard of either the facts or the applicable principles of equity.[10] Furthermore, in reviewing the trial court's action, this court will view the facts

---

[7]See, Minnesota Council v. American Federation, 220 Minn. 179, 19 N. W. (2d) 414, 160 A. L. R. 533. A number of cases that discuss the propriety of granting equitable relief in regard to union elections and the holding of union offices may be found in Annotation, 175 A. L. R. 438, 516.

See, generally, Developments in the Law—Judicial Control of Actions of Private Associations, 76 Harv. L. Rev. 983; Note, 20 Minn. L. Rev. 657.

[8]Minn. St. 585.02; Seward v. Schrieber, 240 Minn. 489, 62 N. W. (2d) 48.

[9]Northern States Power Co. v. City of St. Paul, 256 Minn. 489, 99 N. W. (2d) 207; Northwest Hotel Corp. v. Henderson, 257 Minn. 87, 100 N. W. (2d) 493.

[10]Northwest Hotel Corp. v. Henderson, *supra*; Williams v. Rolfe, 257 Minn. 237, 101 N. W. (2d) 923.

alleged in the pleadings and affidavits as favorably as possible to the party who prevailed below.[11]

In the case before us, plaintiff, at the very least, was required to show that some special and irreparable injury would flow directly to him from the holding of the election in question. Certainly, it was necessary to allege that plaintiff was ineligible to be a candidate for the office of president in the impending election. The complaint and affidavits do not disclose that any showing to that effect was made. The only conclusion that we can reach is that the election was ordered by a trustee who plaintiff claims is acting without authority, in view of his allegations that the suspension of the CLUC charter and appointment of a receiver were illegally made by the president of the parent AFL-CIO. However, as the trial court soundly stated, if the charter suspension and appointment of a trustee are held to be illegal, then any action taken during the tenure of the trustee, including any election, would likewise be void. Plaintiff also sought to have the office held open during the determination of his main action on the grounds that he might lose on his claim that the charter suspension and appointment of the trustee are invalid but prevail on his claim of unlawful removal, and, if the election was held, it would fill the office for 3 years, thereby preventing reinstatement. But, if the trial court should find that plaintiff was unlawfully removed, it may, if it sees fit, order his reinstatement or a new election. Furthermore, plaintiff did not show why an award of money damages, if he prevailed, would not be as complete, effective, and adequate a remedy as holding the office open. In short, he has failed to show why holding this election would cause irreparable harm to any rights he has asserted in his main action or render ineffectual or impossible the relief prayed for. We can only speculate as to the harm feared by the plaintiff which he felt justified enjoining the election. On the basis of the record before the trial court, it would have been an abuse of discretion to have granted a temporary injunction. We, therefore, affirm its decision.[12]

---

[11]Seward v. Schrieber, *supra*; East Lake Drug Co. v. Pharmacists and D. C. Union, 210 Minn. 433, 298 N. W. 722.

[12]Defendants argued below and before this court that the facts of this

We have considered this appeal on its merits although defendants served and filed on October 14, 1963, a motion to dismiss on the ground that, since the appeal was filed after the election had been held and was heard in this court after the term for which plaintiff was elected had expired, the question presented is moot. The fallacy of this contention is that plaintiff sought to enjoin the election for president during the entire period needed to dispose of his main action. Had plaintiff sought to restrain the nomination and election only until his elected term expired on January 1, 1963, then this appeal indeed would be moot.[13] Since plaintiff sought to maintain the status quo by keeping the office open during disposal of his main action, the mere passage of time does not render his claims moot. The questions whether the election was illegal and whether it did cause irreparable harm to plaintiff continue to exist, even though the election has been held and plaintiff's term has expired. We are of the opinion that the questions presented on this appeal were not moot.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

case involved or grew out of a labor dispute and, therefore, the court could only determine whether to grant the requested relief under Minn. St. 185.02. The trial court did not feel that it was necessary to pass on this issue since the requested injunction was denied. We likewise deem it unnecessary to determine whether the statute applies and whether its requirements were satisfied. Since plaintiff could not meet the relatively minimum requirements necessary to obtain a temporary injunction under § 585.02, the conclusion is obvious that he did not satisfy the more comprehensive and stringent requirements of § 185.02.

[13]See, Anderson v. Village of Louisberg, 121 Minn. 528, 141 N. W. 97; City of St. Paul v. St. Paul City Ry. Co. 155 Minn. 500, 193 N. W. 175; Barnes v. Macken, 252 Minn. 412, 90 N. W. (2d) 222.