## LEO G. PICKERIGN v. PASCO MARKETING, INC.

228 N. W. 2d 562.

April 11, 1975—No. 44992.

*Smith & Persian* and *Gary E. Persian,* for appellant.

*O'Connor & Hannan, Joe A. Walters,* and *Michael M. Whalen,* for respondent.

Heard before Sheran, C. J., and Otis, Yetka, Scott, and Knutson, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Plaintiff appeals from an order of the Hennepin County District Court denying his motion for temporary injunction in connection with his action for declaration of rights under a service station lease and dealer contract, and for permanent injunction to prevent removal from or interference with the operation of a service station.

On June 28, 1973, the parties executed a station lease, dealer agreement, and supplement to the dealer agreement, each agreement to commence July 1, 1973. The term of each agreement was 6 months with successive terms of 6 months, subject to the right of either party to terminate at the end of any term upon 30 days' prior written notice. These agreements continued a business relationship that had existed since July 28, 1958.

On November 22, 1973, plaintiff received written notice from defendant that the agreements would be terminated as of midnight December 31, 1973. On January 2, 1974, plaintiff was re-

fused additional gasoline deliveries. Plaintiff commenced the action on January 4, 1974.

■ The limited issue raised by this appeal is whether the order of the trial court constitutes a clear abuse of discretion. Cramond v. AFL-CIO, 267 Minn. 229, 126 N. W. 2d 252 (1964). A court may grant a temporary injunction when it is apparent that the rights of a party will be irreparably injured before a trial on the merits is reached or where the relief sought in the main action will be ineffectual or impossible to grant. Minn. St. 1971, § 585.-02; Cramond v. AFL-CIO, *supra*.

The granting of a temporary injunction serves only to maintain the status quo until the case can be decided on the merits. Village of Blaine v. Independent School Dist. No. 12, 265 Minn. 9, 121 N. W. 2d 183 (1963); 9A Dunnell, Dig. (3 ed.) § 4489. The trial court determined that plaintiff's delay in seeking relief beyond the purported date of termination of the written agreements barred him from obtaining an injunction. The plaintiff argues, and we agree, that this is determinative of one of the basic issues presented in his case, namely, the validity of the 30-day termination notice clause contained in the lease agreement and the dealer agreement. Although we agree that we must consider these two documents together for proper analysis of the relationships of the parties, we do not find that for purposes of injunctive relief identical results need be forthcoming. We hold that the issue of validity of the termination clause raises important questions that should be fully considered by the trial court.

■ The recent energy crisis has necessarily required a re-examination of available petroleum products. We are conscious of the pressure placed on refiners and distributors of such products. Nevertheless, we cannot accept the narrow construction defendant seeks to place on the agreements before this court. The parties obviously had a landlord-tenant relationship. However, they recognized that their relationship was broader than that as they executed a dealer agreement together with each lease

agreement. Plaintiff claims that he is a franchisee. Although we need not determine his status at this time, we recognize that he has been a dealer for defendant for over 15 years, that he has invested a large portion of his available work life in promoting defendant's products, that he is completely without fault regarding the purported termination of the agreement, and that he lacked effective bargaining position to negotiate the terms of these agreements.

The unwarranted discontinuance of service station operating agreements throughout this country is producing much litigation. Recently, in Shell Oil Co. v. Marinello, 63 N. J. 402, 307 A. 2d 598 (1973), certiorari denied, 415 U. S. 920, 94 S. Ct. 1421, 39 L. ed. 2d 475 (1974), the New Jersey court made the following observation (63 N. J. 408, 307 A. 2d 601):

"Viewing the combined lease and franchise against the foregoing background, it becomes apparent that Shell is the dominant party and that the relationship lacks equality in the respective bargaining positions of the parties. For all practical purposes Shell can dictate its own terms. The dealer, particularly if he has been operating the station for a period of years and built up its business clientele, when the time for renewal of the lease and dealer agreement comes around, cannot afford to risk confrontation with the oil company. He just signs on the dotted line."

In Shell Oil Co. v. F.T.C. 360 F. 2d 470, 487 (5 Cir. 1966), certiorari denied, 385 U. S. 1002, 87 S. Ct. 705, 17 L. ed. 2d 541 (1967), Judge Wisdom made the following analysis of the dealer-seller relationship:

"The relationship of a major oil company to its service station dealer goes beyond the bigness-littleness antithesis that exists in innumerable contract negotiations and in the operations of a modern, large business. The inherent leverage a major oil company has over its dealers results from the market structure of the industry and the special dependence on the company of the service station dealer (who is usually also a lessee)."

Also, the position of many of the commentators is to give the dealer greater protection in these arrangements.[1]

Although defendant here is a distributor and not a major oil company, we perceive of no reason why these comments are not applicable herein. Further, we seriously question why principles of equity do not compel a finding that the 30-day notice clause in each agreement, considering the facts and circumstances of this case, is unconscionable and unenforceable as a matter of law.

■ Having raised these questions, we must look beyond the date of December 31, 1973, to determine plaintiff's motion for temporary injunction. On January 2, 1974, when plaintiff sought delivery of gasoline and defendant refused to deliver, there was a clear breach of the dealer agreement, subject to the defense of termination. The "status quo" of the parties on that date was that plaintiff was a tenant of defendant who had a potential claim at law for damages based on defendant's breach of the dealer agreement.

The object of a temporary injunction is to maintain the matter in controversy in its existing condition until judgment so that the effect of the judgment shall not be impaired by the acts of the parties during the litigation.[2] 9A Dunnell, Dig. (3 ed.) § 4489.

---

[1] See, e. g., Note, 4 Seton Hall L. Rev. 683; Caine, *Termination of Franchise Agreements: Some Remedies for Francisees Under the Uniform Commercial Code,* 3 Cumberland-Samford L. Rev. 347; Gellhorn, *Limitations on Contract Termination Rights—Franchise Cancellations,* 1967 Duke L. J. 465; Note, 60 Iowa L. Rev. 122.

[2] Minn. St. 1971, § 585.02, provides in part as follows: "When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief consists wholly or partly in restraining the commission or continuance of some act which, if permitted during the litigation, would work injury to the plaintiff, or when during the litigation it appears that the defendant is about to do, or is doing, or threatening, procuring, or suffering to be done, some act in violation of plaintiff's rights respecting the subject of the action, and tending to make the judgment ineffectual, a temporary injunction may be granted to restrain such act."

We agree that the court should not have compelled defendant to continue its obligations under the dealer agreement. Defendant's actions can properly be evaluated in the claim of the plaintiff for declaratory relief. Defendant has elected to refuse to perform and can be held responsible in damages if its action is held to be improper. However, on January 4, 1974, defendant had taken no action to enforce its alleged right of restitution of the leased property. Therefore, it would have been proper to maintain the status of the parties in the lease agreement so as to minimize the damage to plaintiff. Such a holding would be consistent with the standards we adopted in Dahlberg Brothers, Inc. v. Ford Motor Co. 272 Minn. 264, 274, 137 N. W. 2d 314, 321 (1965).

We affirm the denial of injunction with reference to the dealer agreement for the reasons stated. We remand to the lower court the issue of injunction with reference to the lease agreement with instructions to the lower court to conduct a hearing to consider what change, if any, the passage of over one year has had on the "status quo" of the parties.

Affirmed in part; reversed and remanded in part.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.