**INTEGRATED DEVELOPMENT & MANUFACTURING COMPANY, Appellant,**

v.

**The UNIVERSITY OF MINNESOTA, Controlled Environments, Inc., Respondents.**

**No. C0–84–2114.**

Court of Appeals of Minnesota.

March 12, 1985.

Paul G. Neimann, David P. Jendrzejek, Wiese & Cox, Ltd., Minneapolis, for Integrated Development & Mfg. Co.

William P. Donohue, Associate University Atty., Minneapolis, for the University of Minnesota.

John D. Levine, Raymond A. Hayward, Dorsey & Whitney, Minneapolis, for Controlled Environments, Inc.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

This appeal involves the award of a competitively bid contract by respondent University of Minnesota. Two parties bid on the contract, respondent Controlled Environments, Inc., and appellant Integrated Development & Manufacturing Company. The University awarded the contract to Controlled Environments. Integrated sought a temporary injunction preventing the University and Controlled Environments from entering into or performing the contract. The trial court denied the temporary injunction. We affirm.

## FACTS

In conjunction with the construction of a new building on the St. Paul campus of the University of Minnesota, the departments of agronomy, plant pathology, and soil science decided to purchase 44 controlled environment growth chambers. The chambers are large, self-contained units that allow total control of the growth environment for plants. They are a primary plant research tool and are used extensively by students and staff of the three departments. The useful life of the chambers is between 15 and 25 years.

Because of the estimated $700,000 cost, the importance, and the longevity of the chambers, the departments formed a committee to evaluate the best type of chamber for the department to purchase and to prepare specifications accordingly. The resulting specifications contain a general description of the type of chamber desired. They also identify certain equipment by name and provide a more detailed description. The specifications indicate that the named equipment "or approved equal" may be supplied. The named equipment is that of Controlled Environments, Inc. (CEI).

Included in the specifications are the following quality assurance requirements:

1. § 11605, Pt. 1 ¶ 1.02 A.: All environmental plant growth chambers shall be produced by a single manufacturer. All accessories shall be produced by or recommended by the manufacturer of chamber.

2. § 11605, Pt. 1 ¶ 1.02 B.: Environmental plant growth chambers shall be produced by a manufacturer with not less than three (3) years of successful experience in the manufacturing of plant growth chamber[s] of the same type as specified herein.

These specifications were intended to ensure that the University would not end up

with a manufacturer's first effort in producing the type of growth chambers desired and that a single manufacturer would produce and be responsible for any necessary future work on the chambers.

Although the University is exempt from competitive bidding requirements, it did release an invitation to bid. The advertisement for bids contained the following provisions, whereby the University retained its right to reject all bids:

It is the intent of the University to accept the bid of, and award a Contract to, the lowest responsible Bidder, all factors considered, provided the bid has been submitted in accordance with the bidding requirements, is judged to be reasonable and does not exceed the funds available. The University, however, is not obligated to accept any bid or to award a Contract.

The University reserves the right to reject any and all bids, accept any bid it deems to be in its best interest, waive any informalities in bids submitted and waive minor discrepancies in bidding procedures.

The University received two bids on the project; one from appellant Integrated Development & Manufacturing Company (Integrated) and the other from CEI. Although Integrated's bid was lower, the University rejected it and awarded the contract to CEI because Integrated failed to show the requisite experience in manufacturing chambers of the specific type called for in the specifications and because it proposed to use a second manufacturer to produce the growth chambers.

Integrated brought a motion to temporarily enjoin the University from contracting with any party but itself on the growth chambers project. The trial court denied the motion.

## ISSUE

Did the trial court abuse its discretion in denying Integrated's motion for temporary injunction?

## DISCUSSION

■ Integrated claims the trial court abused its discretion in denying its motion for a temporary injunction. A trial court's ruling on a motion for temporary injunction is largely a matter of judicial discretion. *Paradata of Minnesota, Inc. v. Fox*, 356 N.W.2d 852, 854 (Minn.Ct.App.1984). The only issue on appeal is "whether there was a clear abuse of such discretion by the trial court by a disregard of either the facts or the applicable principles of equity." *Id.* (quoting *Cramond v. AFL–CIO*, 267 Minn. 229, 234, 126 N.W.2d 252, 257 (1964)). This court will "view the facts alleged in the pleadings and the affidavits as favorably as possible to the party who prevailed below." *Id.*

A temporary injunction is an extraordinary equitable remedy. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn.1982) (citing *Pickerign v. Pasco Marketing, Inc.*, 303 Minn. 442, 444, 228 N.W.2d 562, 564 (1975)). "Because a temporary injunction is granted prior to a complete trial on the merits, it should be granted only when it is clear that the rights of a party will be irreparably injured before a trial on the merits is held." *Id.*

In *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965), the court specified five factors that are relevant to making that determination:

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Id.* at 274–75, 137 N.W.2d at 321–22 (footnotes omitted). *See also Miller v. Foley* at 712; and *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 693 (Minn.Ct.App.1984).

 Regardless of the method used to award the contract, it was appropriate for the court to determine whether the University, in the exercise of its discretion, made its decision in an arbitrary, capricious, or unreasonable manner contrary to the public welfare. *See Griswold v. Ramsey County,* 242 Minn. 529, 535, 65 N.W.2d 647, 651–52 (1954). The evidence supports the trial court's conclusion that the University exercised its discretion in a reasonable manner because Integrated does not meet the two reasonable quality assurance specifications and is thus unlikely to succeed on the merits.

First, Integrated does not meet the single manufacturer requirement. § 11605, Pt. 1 ¶ 1.02A. It is apparent from the letter accompanying Integrated's bid that a majority of the chambers would be built by Western Environmental, which is not its subsidiary but rather is a company in which Integrated has an ownership interest.

Integrated argues it would be the sole responsible party, but the danger that a different manufacturer might use different component parts is nonetheless present. This could affect the inventory the University must maintain, because parts are more likely to be interchangeable if all chambers are produced by one manufacturer. In addition, faculty, students, and maintenance employees would benefit by having to familiarize themselves with the component parts of only one manufacturer. We find this evidence sufficient to show that the single manufacturer requirement was reasonable and that Integrated did not meet it.

The evidence also indicates Integrated does not have three years of successful experience in manufacturing chambers equivalent to the type described in the specifications. *See* § 11605, Pt. 1 ¶ 1.02B.

It appears Integrated had custom-built some chambers with some of the desired features but had never produced a model with all of the specified features.

The University's experience specification is reasonable in view of the cost, importance, and longevity of the chambers. To force the University to go through a shakedown period with untried equipment would jeopardize the research projects and careers of students and faculty.

Integrated argued that this requirement "stacks the specs" since CEI is allegedly the only manufacturer marketing a chamber of the type specified. There is no reason to believe this was a fact known to the University at the time the specifications were drawn. Often it is difficult to know who might meet specifications until a bid is let and responses received.

In addition, even though the University released an invitation to bid, it specifically reserved the right to accept or reject any or all bids. Based on the record before us, it does not appear that the University exercised its discretion in an arbitrary, capricious, or unreasonable manner either in drawing up the specifications or in awarding the contract to CEI. Thus, the trial court's conclusion that Integrated is unlikely to succeed on the merits was sound.

Integrated also claims it would be more severely harmed by denial of a temporary injunction than would the University or CEI by granting it. In view of our foregoing dispositive discussion, it is unnecessary to address this factor.

## DECISION

The trial court's denial of a temporary injunction was not an abuse of discretion because Integrated is unlikely to succeed on the merits.

Affirmed.