BIO–LINE, INC., Respondent,

v.

Lynn BURMAN, d.b.a. Burman and Burman Auction Services, Defendant,

and

Harold E. Wilfley, et al., Intervenors, Appellants.

No. C8–86–2012.

Court of Appeals of Minnesota.

April 21, 1987.

John F. Bonner, III, Minneapolis, for respondent.

Harold E. Wilfley, pro se.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellants moved to intervene in an action in which the trial court had issued a temporary restraining order directing that, unless a separate suit were initiated to claim funds at issue, the funds would be disbursed to respondent. The trial court subsequently ordered release of the funds to respondent. Appellants, proceeding pro se, argue that the trial court abused its discretion in disregarding facts they presented to it and ordering release of the funds. We reverse and remand.

## FACTS

Respondent has not filed a brief. Pursuant to Minn.R.Civ.App.P. 142.03, this matter will be decided on the merits.

Appellants Harold and Ellen Wilfley, who live in Oregon, own forty-five percent of the stock of respondent Bio-Line, Inc. and hold promissory notes issued by the corporation and secured by corporate assets. The security interests have been recorded.

In June of 1986, Kyron Michaelson, an officer of the corporation, arranged an auction to dispose of some of the corporate assets. Appellants state that these were the only remaining assets owned by the corporation. The auction was held on June 14, 1986. Appellants attempted to take possession of the assets at the auction, but Michaelson prevented them from doing so. After the auction, appellants contacted the auctioneer, Lynn Burman, and asserted their claim to the proceeds of the auction, amounting to $5,084.95. They asked Burman to deliver the funds to them. When Burman indicated to respondent that he intended to forward the proceeds to appellants, respondent brought this action against the auctioneer and moved for a temporary restraining order (TRO) prohibiting transfer to anyone other than respondent.

Michaelson and Burman testified at a hearing on the motion, and on July 17 the court entered a TRO directing Burman to deposit the funds with the court. The order indicated that the funds would be released to respondent on September 1, 1986, "unless prior to that date any third party asserts a claim to said funds by commencing an action in the Hennepin County District Court * * *." Notice of the order was sent to appellants.

Appellants did not commence a separate action. Nor did they take any action by September 1. Instead, on September 2 they filed both a motion for leave to intervene in this action and a complaint in intervention. The trial court did not act on the motion, but all subsequent court papers and orders identify appellants as intervenors.[1]

---

1. We note that appellants did not strictly follow the procedure for intervening mandated by

Minn.R.Civ.P. 24.03. However, they do meet the requirements of Rule 24.01 for intervention

Respondent moved for an order releasing the funds according to the terms of the TRO, indicating the matter would be heard on October 3. Appellants filed a motion on October 2 asking that the funds be released to them based on the security interests that they had recorded. This motion also indicated it would be heard on October 3.

An order referring to an October 3 hearing was entered on October 10, releasing the funds to respondent. There is no record of the hearing. Court employees have indicated that an informal, off-the-record conference was held that day between the trial court and counsel for respondent. The order does not indicate the basis for the court's decision or show that appellants' motion was considered.

Instead of appealing and seeking a stay of the order, appellants filed an amended complaint in intervention with the district court on November 12, noting that the original motion for leave to intervene had not been ruled upon. Respondent, on November 24, assigned the proceeds of the auction to its attorney and to the IRS. On the same day, the court ordered disbursement according to the assignment.

### ISSUE

Did the trial court err in ordering release of the funds without considering appellants' claim to the money?

### ANALYSIS

Appellants have indicated they are appealing from the trial court's October 10 order releasing funds. However, in reviewing those orders, review of the underlying July 17 TRO is necessary, even though appellants had not intervened in the action at the time the order was filed, because the TRO forms the basis for the subsequent orders. Review of the November 24 order disbursing the funds is also necessary because that order implemented

the court's decision to release the funds. Therefore, discretionary review of the TRO and the disbursement order is granted under Minn.R.Civ.App.P. 103.04.

■ We conclude that the trial court used the TRO as a vehicle for granting permanent relief without conducting a hearing on the merits of the case. Based on the original order, the trial court has disbursed the funds that are claimed by both appellants and respondent. This is contrary to the purpose of temporary injunctive relief, which is to preserve the status quo until adjudication of the case on the merits. *Pickerign v. Pasco Marketing, Inc.*, 303 Minn. 442, 446, 228 N.W.2d 562, 565 (1975). There is a continuum of injunctive relief, beginning with a TRO and encompassing separate steps until a permanent determination is reached after considering the merits of the case:

[Minn.R.Civ.P. 65] embodies the procedure to obtain injunctive relief. The rule sets forth the procedures involved in obtaining restraining orders and temporary injunctions, the purpose of which is to preserve the rights of the parties pending determination of the litigation. [Citation omitted.] A temporary restraining order typically is sought and issued on an ex parte or emergency hearing basis and operates to prevent immediate irreparable injury until a hearing can be conducted to determine the need for a temporary injunction. [Citation omitted.] A temporary injunction is issued after a hearing to preserve the status quo and remains in effect until a decision has been reached at a trial on the merits. [Citation omitted.] A permanent injunction will issue only after a right to such relief has been established at a trial. The procedures for obtaining temporary injunctive relief are technical and exacting. Such relief is available only in extraordinary circumstances where all oth-

as of right. Respondent has not raised an issue regarding any procedural defects, and the trial court consistently identified respondents as intervenors. The Minnesota Supreme Court has followed the policy of encouraging all legitimate intervention. *Costley v. Caromin House, Inc.*,

313 N.W.2d 21, 28 (Minn.1981). Consequently, we determine that appellants must be considered intervening parties to this action with the right to present their interests in the funds at issue here.

er means of resolving the matter have failed or would be inadequate.

2A D. Herr and R. Haydock, *Minnesota Practice* § 65.1 (2d ed. 1985).

In this case the trial court went well beyond ordering temporary relief in order to preserve the status quo. The TRO clearly envisions eventual disposition of the funds to respondent in the event that a separate suit was not instituted. The order makes no provision for a decision on the merits in this action. The trial court implemented the TRO through its subsequent orders releasing and disbursing the funds, orders which were made without conducting a hearing on the merits despite the fact that appellants had intervened and claimed the funds.

The need to address the merits becomes obvious when the trial court's October 10 order releasing the funds is considered. The court had before it opposing motions requesting release to both respondent and appellants. Both motions indicated they were to be considered on October 3. The October 10 order refers to an October 3 hearing, but court employees stated to appellants that a hearing was not held. Instead, an informal conference between the court and respondent's counsel was held that day.

Of course, appellants did not appear at the courthouse on October 3 and ask to be heard, so an adversarial hearing at that time would not have been possible. However, the court had information that opposing parties claimed the funds at issue, indicating that a hearing on the merits was appropriate in order to determine the ultimate distribution of the money. Rather than scheduling or conducting such a hearing, the court proceeded to order release of the money to respondent. A subsequent order disbursed the funds. The trial court erred in relying on a TRO to reach a permanent resolution without conducting a hearing on the merits.

■ We also note other problems resulting from the procedure followed by the trial court. None of the orders indicates what analysis was completed by the trial court in reaching its decision. The analysis that the trial court must complete in granting a TRO is the same as that to be shown before a temporary injunction is issued. *M.G.M. Liquor Warehouse International, Inc. v. Forsland*, 371 N.W.2d 75, 77 (Minn. Ct.App.1985). The court must consider:

(1) The relationship between the parties before the dispute arose; (2) the harm plaintiff may suffer if the injunction is denied, compared to the harm inflicted on defendant if the injunction is granted; (3) the likelihood that the party will prevail on the merits; (4) public policy considerations; and (5) administrative burdens imposed on the court if the [TRO] issues.

*Id.* (citing *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)). This court has held that, where the memorandum accompanying the order does not show that the required analysis was completed, the trial court has acted erroneously in granting relief. *M.G.M. Liquor*, 371 N.W.2d at 77. In explaining the need for findings when such relief is considered, this court has stated:

The determination of the individual *Dahlberg* factors should have taken place at the trial court level. Absent findings, we do not know what the trial court concluded on the issues, and thus we cannot determine whether [the court's action] constituted an abuse of discretion.

*Crowley Co., Inc. v. Metropolitan Airports Commission*, 394 N.W.2d 542, 545 (Minn.Ct.App.1986). Here, the trial court reached a final decision disbursing funds claimed by both appellants and respondent without issuing findings or any statement of the analysis used in reaching that decision. In this instance, the lack of findings clearly inhibits this court's ability to review the trial court's actions. We cannot determine that the required analysis has been completed.

■ Further, Minn.R.Civ.P. 65.03 mandates that no TRO shall be granted except upon the giving of security in an amount the court deems proper. The trial court has wide discretion in setting the amount of the bond, and on appeal this court must determine whether the court abused that

discretion. *Paradata of Minnesota, Inc. v. Fox*, 356 N.W.2d 852, 855 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Feb. 6, 1985). The trial court may decide to waive the security requirement. *In re Giblin*, 304 Minn. 510, 524, 232 N.W.2d 214, 223 (1975).

In this case, the TRO does not mention the security requirement, and respondent was not required to post security. The trial court did initially require respondent to deposit the auction proceeds with the court. However, the court later ordered release of the funds, still acting under the original TRO, without requiring respondent to post security. It is impossible to determine from the record before us whether the trial court waived the security requirement or simply failed to address it. Consequently, we are unable to determine whether the trial court acted within its discretion by deciding that security was unnecessary in this action. We must conclude that the trial court abused its discretion either in failing to address the security issue or in waiving the requirement without any indication of the basis for its decision.

Ultimately, the trial court erred in relying on the underlying TRO to reach a permanent resolution of this matter and compounded the problem by subsequently ordering release and disbursement of the money without requiring security, without issuing findings and without holding a trial on the merits. Because appellants must be allowed an opportunity to have the merits of their arguments considered at trial, the court's orders are reversed and the matter remanded for trial.

■ Finally, we note that if appellants eventually are successful in asserting their claim to the money at issue here, damages from the wrongful issuance of an injunction are recoverable only in an action on the bond, unless the injunction was procured by malice. *AMF Pinspotters Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 507, 110 N.W.2d 348, 353 (1961). Therefore, we instruct the trial court to address the issue of the security requirement before proceeding to a trial on the merits.

**DECISION**

The trial court erred in issuing the TRO and subsequent orders disbursing funds claimed by opposing parties without conducting a hearing on the merits.

Reversed and remanded.