**CENTRAL LAKES EDUCATION ASSOCIATION, et al.,**
**Respondents,**

**v.**

**INDEPENDENT SCHOOL DISTRICT NO. 743, SAUK CENTRE,**
**Minnesota, Appellant.**

**No. C6–87–401.**

Court of Appeals of Minnesota.

Sept. 8, 1987.

Review Denied Nov. 13, 1987.

John M. Roszak, David S. Bartel, Ratwik, Roszak, Maloney & Bartel, Minneapolis, for appellant.

Donald W. Selzer, Jr., Ann M. Curme, Oppenheimer, Wolff & Donnelly, St. Paul, for respondents.

Heard, considered and decided by LESLIE, P.J., SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

This suit arises out of contract negotiations between respondent Central Lakes Education Association ("CLEA") and appellant Independent School District No. 743 ("District"). The CLEA sued the District, alleging its unilateral implementation of its last contract offer constituted unfair labor practices under the Public Employment Labor Relations Act, Minn.Stat. §§ 179A.01–.25 (1986) ("PELRA"). The District appeals from a temporary injunction restraining it from implementing its proposal and from refusing to continue negotiating. We reverse.

## FACTS

The CLEA is the exclusive collective bargaining representative of schoolteachers in Sauk Centre. The CLEA and the District were parties to a collective bargaining agreement covering the 1981–82 and 1982–83 school years. In May 1983, they began negotiating for a new agreement covering 1983–85. Since 1985, the parties have been negotiating for an agreement covering 1985–87 as well. They have been participating in mediation since 1984.

The main areas of dispute are salary and workload. Under the old contract, the secondary teachers' daily workload was five classes per day and one supervisory period (*e.g.*, study hall) per day for half the year. At an October 2, 1986, mediation session, the District offered a $6,400 total average salary increase if the workload was increased to include one supervisory period per day for the full year. The CLEA responded that it would accept the salary increase if it could allocate the raises and the workload remained at one supervisory period for half the year. The District rejected this proposal. The mediator told the parties there would be no more mediation sessions unless one of the parties indicated it was prepared to make a significant new proposal.

On December 8, 1986, the District approved a resolution stating that the parties are at an impasse and that to end the negotiations it was unilaterally implementing its last offer, effective December 10, 1986. In accordance with its resolution, the District issued retroactive paychecks to teachers and made new teaching assignments for the second semester of the 1986–87 school year. On December 11, 1986, the Sauk Centre teachers voted to reject the District's last offer and to seek further mediation.

A final mediation session was held on December 22, 1986. The CLEA proposed a salary increase of $7,064, which the District characterizes as an old proposal it had previously rejected.

The CLEA then brought this suit. It seeks a declaration that the District committed unfair labor practices under PELRA by adopting the December 8 resolution; an injunction restraining the District from implementing its last offer until the teachers file a notice of intent to strike and impasse in negotiations is reached; and damages.

On January 28, 1986, the trial court granted the CLEA a temporary injunction (1) enjoining the District from failing to comply with the 1981–83 bargaining agreement, and specifically its work-load provisions; (2) enjoining the District from failing to negotiate in good faith for agreements covering 1983–85 and 1985–87; and (3) ordering the back-pay paid by the District under its resolution to be placed in escrow.

## ISSUES

1. Does the trial court's memorandum decision adequately set forth the basis of its ruling to permit meaningful appellate review?

2. Did the trial court abuse its discretion by granting the temporary injunction?

## ANALYSIS

### I.

■ The District first argues that we must remand because the trial court failed

to make findings on the five factors set forth for reviewing grants or denials of temporary injunctions in *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). Minn.R.Civ.P. 52.01 states:

> In all actions tried upon the facts without a jury * * *, the court shall find the facts specially and state separately its conclusions of law thereon * * *; and in granting * * * interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

The primary purpose of this requirement is "to aid the appellate court by affording it a clear understanding of the ground * * * of the decision." *Asch v. Housing and Redevelopment Authority*, 256 Minn. 146, 155, 97 N.W.2d 656, 664–65 (1959).

Here, meaningful appellate review is possible because the material facts are not in dispute, the trial court's memorandum contains findings of fact and conclusions of law (although not labeled as such), and it clearly sets forth the basis of its decision. This case is therefore distinguishable from others in which we have reversed for inadequate findings and conclusions. *See Bio-Line, Inc. v. Burman*, 404 N.W.2d 318 (Minn.Ct.App.1987) (no findings or analysis); *Crowley Co. v. Metropolitan Airports Commission*, 394 N.W.2d 542 (Minn. Ct.App.1986) (no findings, conclusion or explanation of basis of decision). While the trial court's memorandum decision should have addressed the *Dahlberg* factors and labeled its findings of fact and conclusions of law as such, in this context its failure to do so does not justify reversal.

## II.

### A.

◼ A temporary injunction is an extraordinary equitable remedy that preserves the status quo pending a trial on the merits. *Miller v. Foley*, 317 N.W.2d 710,

712 (Minn.1982). The party seeking a temporary injunction must show it lacks an adequate remedy at law and that interim relief is needed to prevent "great and irreparable injury." *Cherne Industrial, Inc. v. Grounds & Associates*, 278 N.W.2d 81, 92 (Minn.1979). The threatened injury must be real and substantial, not imagined. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961).

◼ The granting of a temporary injunction rests within the sound discretion of the trial court, and the sole issue on appeal is whether there was a clear abuse of that discretion by a disregard of either the facts or principles of equity. *County of Wright v. Litfin*, 386 N.W.2d 757, 758 (Minn.Ct. App.1986).

The trial court did not address the issue of great and irreparable injury. (Its decision rested entirely on the CLEA's likelihood of success on the merits.) We believe the CLEA has failed to meet this prerequisite for a temporary injunction.

The CLEA argues that if the District is able to avoid negotiating pending trial, this would irreparably harm the CLEA's ability to function effectively as a collective bargaining representative. The CLEA also cites decisions of the New Jersey Public Employees Relations Commission which hold that unilateral implementation of contract provisions create an irreparable chilling effect on negotiations. *See, e.g., County of Morris v. Morris Council # 6*, No. CO–87–169 (N.J. PERC Jan. 28, 1987).

We are unable to accept the contention that a *temporary* (assuming the CLEA wins at trial) end to bargaining and implementation of the District's last offer would substantially and irreparably injure the CLEA's ability to negotiate. This is not a case of a school district attempting to undermine the credibility of a teachers' bargaining representative by refusing to negotiate for a successor agreement—the parties have been negotiating for over three years and have met over 25 times.

■ The CLEA also argues it would have suffered irreparable injury because some teachers would have been forced to work an additional supervisory period, resulting in less preparation time and lower morale. We do not believe this constitutes an injury sufficiently "real and substantial" to justify the extraordinary remedy of a temporary injunction.

### B.

The central dispute between the parties is whether the District has the right to end negotiations and implement unilaterally its last offer under PELRA because collective bargaining has reached an impasse. The trial court's order was based on its conclusions that (1) no impasse had been reached, and (2) even if there was an impasse, PELRA requires that the last contract remain in effect so long as the teachers have not served a notice of intent to strike. Although we hold that the CLEA is not entitled to a temporary injunction because it has failed to show great and irreparable injury, we will address the merits of the legal issues decided by the trial court to ensure this case is not tried on erroneous rules of law.

### *Impasse*

■ Under the National Labor Relations Act (the "NLRA"), an employer may unilaterally implement its last offer when good-faith negotiations have reached an impasse. *See, e.g., American Federation of Television and Radio Artists v. NLRB*, 395 F.2d 622, 624 (D.C.Cir.1968), *aff'g Taft Broadcasting Co.*, 163 N.L.R.B. 475, 64 L.R.R.M. (BNA) 1386 (1967); *cf. Foley Education Association v. Independent School District No. 51*, 353 N.W.2d 917, 921 (Minn.1984) (stating that unilateral change not unfair labor practice if employer shows there was not a bad faith refusal to bargain). The District argues this principle applies under PELRA. Since the CLEA does not dispute this, we will assume it applies for purposes of this appeal.

■ The trial court found that the parties had not reached "impasse" as defined by federal case law. The District argues it was error for the court to base its finding on case law because PELRA defines impasse in its section on interest arbitration, and this provision abrogates the common-law definition.

The relevant section provides, in part:

For all public employees except those specified in subdivision 2, the director shall certify a matter * * * for binding interest arbitration if:

(a) the director has determined that further mediation would serve no purpose and has certified an impasse, or impasse has occurred because the exclusive representative and the employer have participated in mediation for the period required in section 179A.18, subdivisions 1 and 2, and the collective bargaining agreement has expired * * *.

Minn.Stat. § 179A.16, subd. 1 (1986). There is no dispute "impasse" has occurred under this section: the parties have mediated for the "period required" under the statute and that the collective bargaining agreement has expired. The CLEA argues, however, that this definition is inapplicable. We agree.

Since PELRA does not provide for an employer's unilateral implementation of its last offer, it follows that the legislature did not intend § 179A.16 to define "impasse" for purposes of determining when an employer may do so. This is a common law doctrine under the NLRA, and the doctrine includes a definition of impasse. *See, e.g., Electric Machinery Co. v. NLRB*, 653 F.2d 958, 963 (5th Cir.1981). It does not make sense to apply the common law doctrine only in part, substituting for its definition of impasse the definition found in § 179A.16. Not only does that section define impasse specifically for determining when interest arbitration is available, but even in that context it does not purport to be an exclusive definition: the director may determine that an impasse has been reached without reference to whether the conditions relied on by the District have been fulfilled. § 179A.16, subd. 1(a); *see*

*also id.,* subd. 2 (parties may request arbitration by "stating that an impasse has been reached").

■ The District argues the interest arbitration section's definition of impasse should apply because then impasse (and hence unilateral implementation) would occur when the teachers have the right to strike. *Compare* § 179A.16, subd. 1, *with* § 179A.18, subds. 2–3. It has been held, however, that the maturation of the right to strike does not necessarily mean the employer has the right to implement its last offer. *NLRB v. J.H. Bonck Co.,* 424 F.2d 634 (5th Cir.1970) (affirming finding of no impasse despite strike).

### Contract in effect

■ Even if it is determined at trial that an impasse has been reached, the District could be prevented from unilaterally implementing its last offer by PELRA's "contract in effect" provision. Minn.Stat. § 179A.20, subd. 6 (1986), provides:

*Contract in effect.* During the period after contract expiration and *prior to the date when the right to strike matures,* * * * the terms of an existing contract shall continue in effect and shall be enforceable upon both parties.

(Emphasis added.)

The parties dispute whether the teachers' right to strike has "matured." Their right to strike is governed by the following provisions:

Subd. 2. *School district requirements.* Except as otherwise provided by section 179A.17, subdivision 1, teachers employed by a local school district * * * may strike only under the following circumstances:

(1)(a) the collective bargaining agreement between their exclusive representative and their employer has expired or, if there is no agreement, impasse under section 179A.17, subdivision 1, has occurred; and

(b) the exclusive representative and the employer have participated in media-

tion over a period of at least 30 days * *; and

(c) neither party has requested interest arbitration or a request for binding interest arbitration has been rejected; or

(2) the employer violates section 179A.13, subdivision 2, clause (9).

Subd. 3. *Notice.* In addition to the other requirements of this section, *no employee may strike unless written notification of intent to strike is served* on the employer and the director by the exclusive representative at least ten days prior to the commencement of the strike.

Minn.Stat. § 179A.18, subds. 2–3 (1986) (emphasis added).

The CLEA argues, and the trial court concluded, that the right to strike does not "mature" for purposes of the "contract in effect" provision until the teachers serve a notice of intent to strike under § 179A.18, subd. 3. The District argues that the right to strike "matures" after the agreement expires and the parties have mediated for thirty days; the teachers then have the *right* to strike, and the notice of intent to strike is the means of exercising that right.

We agree with the District that the teacher's right to strike matures when they have the right to file a notice of intent to strike. This is indicated by a number of factors.

First, the structure of § 179A.18 reflects the distinction between having the right, or power, to strike, and exercising that right: subdivision 2 describes the "circumstances" under which teachers are authorized to strike, while subdivision 3 merely requires ten days notice that they intend to strike.

This distinction between having the right to strike and exercising that right (by serving notice) is also reflected in the legislative history of 1985 amendments to PELRA's right to strike provisions. Minutes of a meeting of the Advisory Council on Bargaining Impasse Resolution contain the following recommended change:

No Notice of Intent to Strike can be issued *nor* would the right to strike mature until:

a) Contract has expired; and

b) Mediation Period has expired.

Minutes of Advisory Council on Bargaining Impasse Resolution 2 (Nov. 14, 1984) (emphasis added).

The Advisory Council's final report recommended:

Retain the existing right of teachers to strike but modify the procedures for exercising that right as follows:

\*     \*     \*     \*     \*     \*

B. Allow teachers to initiate a single opportunity to strike by the filing of a written notice.

Advisory Council on Bargaining Impasse Resolution, Final Report 19 (Jan. 1985).

■ The CLEA moved this court to strike copies of this legislative history from the District's reply brief because it (a) is irrelevant; (b) is evidence outside the record of which we may not take judicial notice; and (c) is not in response to new matter in its brief. We deny the motion. The materials are relevant and responsive to assertions in the CLEA's brief about the 1985 amendments, and they are not "evidence" outside the record. Since it was proper to cite the materials, it was proper for the District to append copies to its reply brief.

Second, the contract in effect section provides that it applies until *"the date* when the right to strike matures." § 179A.20, subd. 6 (emphasis added). This suggests an intent that there be a date certain, after which the provision no longer applies. Under the District's interpretation, the provision no longer applies when the contract expires and the parties have participated in mediation for 30 days. Under the CLEA's interpretation, it is uncertain when, if ever, the provision no longer applies. The teachers could keep a contract in effect indefinitely merely by not filing a notice.

Third, since employees (other than teachers) can file a notice of intent to strike, then not strike, then file a notice, and so on, under the CLEA's interpretation the right to strike could mature and unmature. This would result in the contract alternating between being in effect and not being in effect. Although a court could avoid this absurd result by not allowing the right to strike to unmature, this implication of a straightforward application of the CLEA's interpretation suggests the District's interpretation is more tenable.

Both sides argue their interpretation maintains equality of bargaining power. The District correctly notes that the CLEA's position would result in employees having sole control over keeping the prior contract in effect.

■ The CLEA contends that employers would have no incentive to bargain under the District's interpretation, because they could wait for the 30–day mediation period to expire and then implement their last offer. This ignores the fact that (1) there must be an impasse before unilateral implementation, which requires good faith bargaining, *see, e.g., Electric Machinery Co.,* 653 F.2d at 963, and (2) employees would still have the right to strike, which would give employers incentive to negotiate.

Finally, the District argues that the trial court lacked jurisdiction to grant the temporary injunction because it failed to comply with certain requirements of the anti-injunction provisions of the "Little Norris-La-Guardia Act." *See* Minn.Stat. §§ 185.07, –.13 (1986). Specifically, the District argues this statute was violated because there was (1) no testimony in open court and no opportunity for cross-examination; (2) no findings of fact; and (3) no finding of irreparable harm or inadequate remedy at law. The CLEA argues the statute does not apply. *See* Minn.Stat. § 179A.24.

In light of our holding that the temporary injunction should not have been granted because the CLEA failed to meet the common law requirement of showing great and irreparable harm, we need not decide whether the anti-injunction statute applies.

## DECISION

The trial court's memorandum decision is adequate to permit meaningful appellate

review. The trial court erred in granting a temporary injunction because CLEA failed to show it would otherwise suffer great and irreparable harm. The trial court did not err in using the common law definition of impasse. The right to strike matures under Minn.Stat. § 179A.20 (1986) when the provisions of Minn.Stat. § 179A.18, subds. 1–2 (1986), are satisfied, not when a notification of intent to strike is served.

Reversed.