The GRIFFIN COMPANIES,
INC., Respondent,

v.

The FIRST NATIONAL BANK OF ST.
PAUL, Defendant,

Heritage Associates, Ltd., Appellant.

No. C2–85–729.

Court of Appeals of Minnesota.

Oct. 1, 1985.

Richard I. Diamond, Mark E. DuVal, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for respondent.

Richard Anderson, St. Paul, for defendant.

Richard Rosow, Lang, Pauly & Gregerson, Ltd., Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from an order granting a temporary injunction preventing the honor of a letter of credit. We affirm.

### FACTS

This is an appeal from an order granting a preliminary injunction on March 15, 1985, preventing the honor of an irrevocable letter of credit procured by Griffin Companies, Inc. (Griffin) in favor of Heritage Associates Limited (Heritage). The letter was issued by the First National Bank of St. Paul which has renewed the letter until December 31, 1985. The injunction issued based on Griffin's claim that Heritage attempted to draw on the letter using a fraudulent certification that the amount was due. Heritage appeals.

Heritage is a limited partnership with its principal place of business in Florida. The Phoenix Co., based in Florida, is Heritage's general partner. Griffin is a Minnesota corporation with its principal place of business in Minnesota.

On October 25, 1984, Heritage as seller entered into a purchase and sale agreement (amended on November 15, 1984), with Griffin as purchaser. Heritage agreed to sell and Griffin agreed to buy a 288 unit apartment building for $9,250,000. Known as The Heritage Apartments, the building is located in Charlotte, North Carolina.

Under the agreement Griffin was required to procure an irrevocable letter of credit in the amount of $50,000 payable to Heritage as earnest money. Griffin obtained the letter from the First National Bank of St. Paul, a national banking association with its principal place of business in Minnesota.

Paragraph 3 of the agreement provides that the letter is to serve as liquidated damages in the event of a default by Griffin. Several provisions of the agreement contain the language:

"if this Agreement is terminated without the fault of Purchaser then Seller shall have no further interest in the Earnest Money Letter of Credit."

Drafts drawn under the letter are required by its terms to be accompanied by a certification that the amount drawn is due from Griffin pursuant to the agreement.

The closing on the property failed to take place, however, and Heritage made demand upon the Bank for payment under the letter. Heritage's attorney, Jeffrey Kravitz, submitted a draft payable to Heritage in the amount of $50,000. Accompanying the draft was a certificate signed by Kravitz stating that the amount was due from Griffin pursuant to the agreement.

Heritage maintains that Griffin breached the underlying agreement because it was unable to obtain financing for the down payment due at closing. Prior to the closing date of December 19, 1984, the parties had discussed modifying the payment terms of the agreement. Neil Elsila, the general partner of The Phoenix Group Co. (Heritage's general partner) was primarily responsible for Heritage's role in the sale. According to his affidavit, he was told by James Wadsworth, a vice president of Griffin, that Griffin was unable to make the cash down payment of $2,150,000.00. Wadsworth proposed a down payment of one million dollars instead.

Elsila took this proposal under consideration and relayed it to the attorney for the Heritage limited partners, Isaac Zisselman. Subsequently, Wadsworth informed Elsila that Griffin was unable to close with a million dollar payment and could pay only $100,000 at that time. One of the Heritage limited partners, FDRI Associates refused to agree to the modification. FDRI is a 60% limited partner in Heritage.

A different chain of events led to the breakdown of the agreement according to Griffin. Griffin claims that Heritage breached the contract by failing to comply with three conditions precedent. Griffin argues that because Heritage failed to comply with these conditions precedent, the agreement was void. Griffin also claims that Heritage knew it was not entitled to payment under the letter, and that consequently its certification that the funds were due was fraudulent.

## ISSUE

Did the trial court clearly abuse its discretion in granting the temporary injunction?

## ANALYSIS

The sole issue on appeal of a temporary injunction is whether the trial court clearly abused its discretion by disregard of facts or applicable principles of equity. *Edin v. Jostens*, 343 N.W.2d 691, 693 (Minn.Ct.App. 1984). This court will view the facts alleged in the pleadings and affidavits as favorably as possible to the party who prevailed below. *Integrated Development & Manufacturing v. University of Minnesota*, 363 N.W.2d 845, 847 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. May 24, 1985). Applying these principles to the present case, the trial court's ruling should be affirmed.

■ Five factors should be considered when determining whether preliminary injunctive relief should issue: (1) the nature of the parties' relationship; (2) the relative hardships; (3) the likelihood that one party will prevail on the merits; (4) public policy; and (5) the administrative burdens involved. *Integrated Development & Manufacturing*, 363 N.W.2d at 847–48.

### Nature of the Relationship

■ The parties to this dispute are involved in contractual relationships regarding the underlying agreement and the letter of credit. Three distinct contracts are involved: (1) the contract between the bank and Griffin under which the bank agreed to issue the letter of credit to Heritage; (2) the contract of sale between Griffin and Heritage by which Heritage agreed to obtain payment under the letter by drawing drafts accompanied by a certification that the amount drawn is due from Griffin; and (3) the letter of credit itself, which is a contract between the bank and Heritage by which the bank agreed to pay the drafts drawn under the letter if accompanied by the requisite certification. *See Dynamics Corporation of America v. Citizens and Southern National Bank*, 356 F.Supp. 991, 995 (N.D.Ga.1973).

### Relative Hardships

In this case the harm to be suffered by Griffin if the temporary restraint were denied is greater than the harm inflicted on Heritage by its grant. Griffin would have faced an immediate loss of $50,000 if the injunction were denied. If Griffin later prevailed at trial, it would have to attempt to recapture the funds. On the other hand, the harm to Heritage consists of waiting until trial to have its rights under the letter determined, while the funds remain in the bank.

A similar result was reached by the federal district court in the *Dynamics* case. There the court temporarily enjoined the honor of a letter of credit issued in favor of the Government of India. *Id.* The basis of the relief was a claim of fraudulent certification by the beneficiary. *See id.* Considering the harm to be suffered by requiring the beneficiary to wait until trial, the court reasoned:

> The Deposit is currently in the hands of the Bank and is earning interest daily. It is a large sum of money and all sides attach a great deal of importance to their respective rights to it. An injunction against the Bank would merely require it to continue holding on to the deposit. * * * India * * * [has] waited nearly a year before exercising its rights under the letter of credit. It would not appear that India would be seriously disadvantaged by some further delay and the entry of a preliminary injunction.

*Id.* at 1000. We recognize that irreparable harm is harm not compensable by money

damages. However, injunction is an equitable remedy and to ignore fraud in this instance and permit payment of the letter of credit would favor the wrongdoer and penalize Griffin.

### Likelihood of Success on the Merits

It appears that Griffin has a likelihood of success on the merits. The applicable U.C.C. provision as adopted by the Minnesota Legislature is Minn.Stat. § 336.5–114 (1965) (amended 1978). *See Harris Corporation v. National Iranian Radio and Television,* 691 F.2d 1344, 1354–55, n. 19 (8th Cir.1982) (under the U.P.C., section 5–114 of the U.C.C. applies to fraudulent documentation in a letter of credit transaction). In *Shaffer v. Brooklyn Park Garden Apartments,* 311 Minn. 452, 250 N.W.2d 172 (1977) our supreme court construed that section. *Shaffer* held that a court may enjoin a letter of credit presented by one who is not a holder in due course, where there are allegations of fraudulent documentation before payment. *Id.* Heritage makes no claim that it is a holder in due course. As is the case here, the letters of credit in *Shaffer* required certification by the beneficiary that funds drawn under the letter were due. *Id.* at 455, 250 N.W.2d at 175. The plaintiff there also claimed that the certifications were false. *Id.* at 456, 250 N.W.2d at 176.

■ Allegations of fraudulent certification bring into effect the provisions of 5–114(2). *Id.* at 463, 250 N.W.2d at 179. Under subsection (2)(a), where the presenter is a holder in due course, the issuer must honor the demand for payment regardless of alleged fraud in the certification. *Id.* The risk of the beneficiary's bad faith is properly placed on the customer rather than on an innocent third party. *Id.* Where the presenter is not a holder in due course, such as Heritage, the bank may honor the draft on presentment, but is not required to, and a court may enjoin honor. *Id.* at 463–64, 250 N.W.2d at 179–80. Where an injunction is sought the bank is relieved of making a factual determination of the fraud issue. *Id.* at 464, 250 N.W.2d at 180.

Under North Carolina law the result would be the same. Section 5–114 as adopted by North Carolina is identical to the Minnesota section construed in *Shaffer. See* N.C.Gen.Stat. § 25–5–114 (1965). The statute was construed in *O'Grady v. First Union Bank of North Carolina,* 296 N.C. 212, 250 S.E.2d 587 (1978). Presentment of fraudulent documents accompanying the draw on a letter of credit was held to warrant an injunction. *See id.* O'Grady defined the meaning of "fraudulent" contemplated by the statute as a document which is forged, drawn without any underlying basis in fact, partly spurious or one that has been materially altered. *Id.* at 234, 250 S.E.2d at 601. Whether the certification in this case that the $50,000 was due had any basis in fact is an issue of fact which must be resolved at trial.

### Public Policy

■ The public policy involved here is twofold. The trial court had to balance the competing policies of encouraging the use of letters of credit as a financing device against discouraging fraud in their use. While a letter of credit is independent of the primary contract, and banks are not permitted to delay paying drafts against documents in proper form, the principle of independence should not be extended to protect an unscrupulous beneficiary. *See Sztejn v. J. Henry Schroeder Banking Corporation,* 177 Misc. 719, 721–22, 31 N.Y.S.2d 631, 633–34 (Sup.Ct.1941). The doctrine of independence presupposes the genuineness of the documents themselves. *Id.* at 721, 31 N.Y.S.2d at 634.

### Administrative Burdens

Supervision and enforcement of the injunction should not be a real administrative burden. This is a negative injunction and the bank holding the funds is located in Minnesota. No reason appears why the trial court's determination of this factor should be reversed.

### Conclusion

A preliminary injunction is designed to preserve the status quo. The trial judge

was presented with conflicting affidavits as to the relevant facts. As a matter of procedure where the evidence upon which a temporary injunction is sought is conflicting, this court should not interfere with the action of the trial court in granting or refusing it. *See Seward v. Schrieber*, 240 Minn. 489, 492, 62 N.W.2d 48, 51 (1953). The trial court's task in exercising its discretion was not to make an ultimate adjudication of compliance with the underlying agreement. *See Dynamics* at 999. By issuing the injunction the trial court was simply guaranteeing that Heritage would not be allowed to take unfair advantage of the situation and obtain Griffin's $50,000 with a perfunctory declaration having no basis in fact. *See id.* If it should turn out that there is a basis for Heritage's certification, the legal remedy will be available once that has been determined at trial.

### DECISION

The trial court did not clearly abuse its discretion by temporarily enjoining the honor of the letter of credit.

Affirmed.