TRAIL LEASING, INC., Respondent,

v.

DROVERS FIRST AMERICAN BANK, Petitioner, Appellant.

No. CX–88–1352.

Supreme Court of Minnesota.

Nov. 3, 1989.

R.D. Blanchard, Thomas H. Crouch, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Patrick A. Farrell, Elliott B. Knetsch, Grannis, Grannis, Farrell & Knutson, P.A., South St. Paul, for respondent.

## OPINION

SIMONETT, Justice.

This case asks whether a bank, defending against a customer's claim of negligence in the handling of its checks, was a holder in due course. We conclude that it was as a matter of law and reverse the court of appeals' decision to the contrary.

Plaintiff-respondent Trail Leasing, Inc., sues defendant-appellant Drovers First American Bank. Trail Leasing alleges Drovers negligently cashed certain checks drawn on plaintiff's checking account at Drovers. The facts are stipulated.

Over a period of about 2½ years, Pamela Haas, employed as an assistant bookkeeper by Trail Leasing, embezzled funds from her employer. Haas had access to the check blanks for Trail Leasing's commercial account at Drovers. On April 11, 1983, she wrote out a check for $328.20 payable to Drovers First American State Bank. She then had two of Trail Leasing's autho-

rized officers sign the check. (Three of Trail Leasing's officers were authorized by resolution to sign checks and this authorization was on file with the bank. Haas was not one of the three.) Haas went to Drovers and asked for cash for the check. She filled out and gave to the bank a "change order form," a form used by a bank's customers specifying the coins and bill denominations in which they wish to take cash for business operations. Haas did not endorse the check. Drovers paid the cash to Haas, who pocketed the money.

From April 11, 1983, to October 1985, every few weeks, Haas would repeat this transaction, the amounts of the checks varying from $67.97 to as much as $1,156.43, always, it seems, in some odd amount and always payable to the Drovers bank. By the time her scheme was discovered (through a discrepancy in one of the change orders), Haas had negotiated 55 checks for a total of $39,952.17. The stipulation of facts does not disclose how Haas was able to get the authorized officers of her company to sign the checks, nor how her scheme was able to evade whatever internal controls her employer might have had. The checks contained no notations as to their purpose.

During all of this time Trail Leasing was indebted to Drovers on loans involving its leasing business. The stipulation of facts does not disclose the amounts or due dates of the periodic payments on these loans. Drovers did not participate in or know of the embezzlement scheme, and the parties stipulated that Drovers did not have notice of facts from which it could be inferred that Haas was acting contrary to her employer's interests. Drovers never contacted Trail Leasing to determine if Haas had authority to receive cash for these checks she brought to the bank. As already mentioned, Haas was not authorized by her employer to sign checks.

When this case was called for trial, a discussion arose on Drovers' asserted defense that it was a holder in due course. The parties felt this was a threshold issue. Consequently, the trial was continued and Drovers moved for summary judgment on its asserted defense. The trial court granted Drovers summary judgment, ruling that the bank was a holder in due course as a matter of law and, therefore, took the Haas checks free from all claims.

The court of appeals in an unpublished opinion reversed the trial court, ruling that Drovers was not a holder in due course because "Drovers did not take the instrument for value." Rather, "Haas was simply withdrawing money from Trail Leasing's commercial account." The appeals panel remanded the case for trial on plaintiff's negligence claim. We granted Drovers' petition for further review.

Apparently at the trial court and court of appeals levels, Trail Leasing alternatively contended that whether Drovers was a holder in due course was irrelevant to its negligence claim. Before us, however, Trail Leasing agrees with Drovers that if the bank is a holder in due course plaintiff's negligence claim is barred. The dispositive issue before us, then, and the only issue presented, is whether Drovers is a holder in due course.

The issue may be further narrowed. Under Minn.Stat. § 336.3–302 (1988), a holder in due course is anyone who takes the instrument "(a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Here it has been stipulated that Drovers took the Haas checks in good faith and without notice of any claims.[1] The issue then becomes, as it did for the appeals panel, whether Drovers meets the third requirement of taking the checks "for

1. In any event, it appears from the stipulation of facts that Drovers did not have actual notice of any claim by Trail Leasing that cash paid for the checks was not to be paid to Haas nor did it have knowledge of facts from which a holder could reasonably infer the probable existence of Trail Leasing's claim. *See Eldon's Super Fresh*

*Stores, Inc. v. Merrill Lynch,* 296 Minn. 130, 136–37, 207 N.W.2d 282, 287–88 (1973). Under a holder in due course analysis, negligence does not amount to notice when based on "failure to make inquiry about an unknown fact." *Id.,* 296 Minn. at 138, 207 N.W.2d at 288.

value." This, too, is the issue raised in the petition for further review by Drovers.

We conclude that Drovers took the Haas checks "for value" and, therefore, was a holder in due course.

"A holder takes the instrument for value," says Minn.Stat. § 336.3–303(a), "to the extent that the agreed consideration has been performed or that he acquires a security interest in or lien on the instrument otherwise than by legal process." This provision eliminated a conflict in prior law by making clear that merely a promise to the transferor is not value until the promise has been performed.[2] Here Drovers performed; it paid cash for the checks. Trail Leasing argues that at best Drovers gave only "conditional value" because it retained and exercised the right to debit Trail Leasing's commercial account. But even so, the bank first had to pay out its money before debiting Trail Leasing's account. As the comment to § 336.3–303 says, "Where an agreed sum of money is actually paid for an instrument * * * as the purchase price for it * * * the instrument is clearly taken 'for value' * * *." Cf. Suit & Wells Equipment Co., Inc. v. Citizens Nat'l Bank of Southern Maryland, 263 Md. 133, 137, 282 A.2d 109, 111 (1971) (bank which cashes a check, i.e., purchases the check, drawn on another bank is a holder in due course); Roland v. Republic Nat'l Bank of Dallas, 463 S.W.2d 747, 749 (Tex.Civ.App.1971) (bank becomes a holder in due course when bank paid face value for checks presented by payee and drawn on an account at bank and thus had right to reimburse itself from customer's account). Cases cited by Trail Leasing where a bank takes a check, credits the depositor's account, but never issues cash against the check, are not on point. This is not a case, either, where Haas withdrew money from Trail Leasing's account

with a simple withdrawal slip. Here she used a valid negotiable instrument.

Reversed and the trial court's summary judgment in favor of the bank is reinstated.

COYNE, J., took no part in the consideration or decision of this case.

---

2. See comment to Minn.Stat. § 336.3–303 (1988):

Where an agreed sum of money is actually paid for an instrument either as the purchase price for it or as a loan or discount on it as security * * * the instrument is clearly taken "for value" under paragraph (a). However,

where the taker merely makes a promise to the transferor to pay, lend, act or transfer—for example, where a bank gives revocable credit in a checking account—there is no "value" until and to the extent that the credit is drawn out or the promise is otherwise performed.