MENARD, INC., Appellant,

and

First Commercial Bank of Taipei, Taiwan, Intervenor, Respondent,

v.

KING DE SON, CO., LTD., Respondent,

Value Valley Corporation, Defendant,

Burlington Northern Intermoda, Respondent.

NATIONAL CITY BANK OF MINNEAPOLIS, Respondent,

and

First Commercial Bank of Taipei, Taiwan, Intervenor, Respondent,

v.

MENARD, INC., Appellant.

No. C6–90–1588.

Court of Appeals of Minnesota.

March 5, 1991.

Steven K. Champlin, Michael J. Wahoske, Susan S. Byers, Dorsey & Whitney, Minneapolis, David T. Coriden, Menard, Inc., Eau Claire, Wis., for Menard, Inc.

Laura J. Hanson, James F. Roegee, Meagher & Geer, Minneapolis, for First Commercial Bank of Taipei, Taiwan.

Quentin R. Wittrock, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for King De Son, Co., Ltd.

J. Anthony DeRungs, Thomas W. Spence Law Office, St. Paul, for Burlington Northern Intermoda.

Thomas A. Keller, III, Kevin M. Busch, O'Connor & Hannan, Minneapolis, for Nat. City Bank of Minneapolis.

Considered and decided by FOLEY, P.J., HUSPENI and FORSBERG, JJ.

OPINION

FOLEY, Judge.

Appellant Menard, Inc. contends there are genuine issues of material fact whether respondent First Commercial Bank of Taipei, Taiwan is a holder in due course of letters of credit issued by respondent National City Bank of Minneapolis on behalf of Menard with respondent King De Son, Co., Ltd. of Taipei, Taiwan as the beneficiary. The trial court granted summary judgment for First Commercial and dissolved an injunction against payment on the letters of credit, holding First Commercial was a holder in due course. We affirm.

FACTS

Beginning in 1984, Menard purchased goods from a Taiwanese exporter, King, for resale in the United States. Payment for the goods was by irrevocable letters of credit. National City Bank issued the letters of credit on behalf of Menard with King as the beneficiary. After the goods were shipped, King presented drafts to the confirming bank, First Commercial in Taipei. First Commercial in turn presented the instruments to National City Bank for payment.

In May 1989, Menard discovered there were shortages in goods received from King. Menard demanded that National City Bank refuse to honor the letters of credit. National City Bank, however, continued to make payments on the drafts. On May 16, 1989, Menard obtained a temporary restraining order prohibiting National City Bank from paying First Commercial on any outstanding drafts. Later, after a hearing, the trial court extended the temporary restraining order to a temporary injunction.

First Commercial intervened and moved for summary judgment on the grounds that it was a holder in due course and entitled to payment. Menard opposed the summary judgment motion on the ground that there were genuine issues of material fact as to

First Commercial's status as a holder in due course.

On June 6, 1990, the trial court granted summary judgment for First Commercial and dissolved the injunction. Menard appeals.

## ISSUES

1. Did the trial court err in finding First Commercial was a holder in due course and dissolving the injunction?

2. Did the trial court abuse its discretion in granting Menard more time for discovery?

3. Did the trial court abuse its discretion in denying First Commercial's motion for attorney fees?

## ANALYSIS

1. Menard argues the trial court erred in granting summary judgment. On appeal from summary judgment, we review the record to determine if there are any issues of material fact in dispute and whether the trial court erred in applying the law. *Shuman v. University of Minnesota Law School,* 451 N.W.2d 71, 74 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 16, 1990) (citing *Goodkind v. University of Minnesota,* 417 N.W.2d 636, 638 (Minn.1981)). If the moving party in a summary judgment motion makes out a prima facia case, the burden shifts to the nonmoving party. *Minnesota Mut. Fire & Casualty Co. v. Retrum,* 456 N.W.2d 719, 723 (Minn.App. 1990) (citing *Thiele v. Stitch,* 425 N.W.2d 580, 583 (Minn.1988)). The nonmoving party must show substantial affirmative evidence that a factual dispute exists. *Carlisle v. City of Minneapolis,* 437 N.W.2d 712, 715 (Minn.App.1989).

Menard argues that there are fact issues concerning whether First Commercial is a holder in due course of the drafts presented by King. We disagree. We find Menard failed to show substantial affirmative evidence that a factual dispute exists.

At issue here is the agreement and relationship between National City Bank and First Commercial. The agreement is in the form of a letter of credit, which is

an engagement by a bank * * * made at the request of a customer * * * that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.

Minn.Stat. § 336.5-103(1)(a) (1988).

Letters of credit are independent and separate from the underlying contractual relationship. The issuer's obligation is independent of the existence or nonexistence of an obligation of the customer to the beneficiary. *Shaffer v. Brooklyn Park Garden Apartments,* 311 Minn. 452, 461-62, 250 N.W.2d 172, 178-79 (1977); Minn. Stat. § 336.5-109(1)(a) (1988). We have before us four separate agreements, between (1) Menard and King; (2) National City Bank and Menard; (3) First Commercial and National City Bank; and (4) King and First Commercial. *See Griffin Companies v. First Nat. Bank of St. Paul,* 374 N.W.2d 768, 770 (Minn.App.1985).

Menard argues that, because King did not deliver the specified amount of goods as agreed, there was fraud in the transaction. Menard further contends National City Bank should not honor the drafts. We disagree.

Minn.Stat. § 336.5-114(1) (1988) provides:

An issuer must honor a draft * * * for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary.

Comment 1 to section 336.5-114 explains:

The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary.

Minn.Stat.Ann. § 336.5-114 comment 1 (West 1966). The Minnesota comment further explains that

the issuer's obligation depends solely upon compliance with the terms of the credit and is not affected by whether goods or documents comply with the un-

derlying contract between customer and beneficiary.

Minn.Stat.Ann. § 336.5–114(1) Minn. comment (West 1966). The purpose of this statute is to place the risk of the bad faith of the beneficiary on the buyer, who chose the beneficiary, rather than an innocent third party. *Shaffer*, 250 N.W.2d at 179.

■ In this case, the drafts appeared to comply with the terms of the letters of credit. Because the documents facially appeared to comply with the letters of credit, First Commercial, as the confirming bank, was required by law to honor the drafts. Minn.Stat. § 336.5–107(2) (1988).

Similarly, if First Commercial was a holder in due course, National City Bank was required to honor the drafts (as it did before the injunction) from First Commercial, because the documents facially complied with the letters of credit.

Minn.Stat. § 336.5–114(2) provides:

Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title * * * or there is a fraud in the transaction:

(a) the issuer must honor the draft on demand for payment if honor is demanded by a negotiating bank or other holder of the draft * * * which has taken the draft * * * under the credit and under circumstances which would make it a holder in due course.

Both parties agree that if First Commercial is a holder in due course, then the injunction should be dissolved and First Commercial is entitled to payment under Minn.Stat. § 336.5–114(2)(a). A holder in due course takes the instrument free from all claims to it on the part of any person. Minn.Stat. § 336.3–305 (1988). Holder in due course status is granted to protect an innocent third party who has irrevocably given credit. Minn.Stat.Ann. § 336.3–304 comment 3 (West 1966).

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Minn.Stat. § 336.3–302 (1988).

### Value

■ We agree with the trial court that First Commercial gave value. Minn.Stat. § 336.3–303(c) defines value as an irrevocable commitment to a third person. Menard argues First Commercial did not pay value for the drafts, but provided King with only provisional credit. *See Marine Midland Bank of New York v. Graybar Elec. Co.*, 41 N.Y.2d 703, 395 N.Y.S.2d 403, 409, 363 N.E.2d 1139, 1145 (1977) (provisional credit is not value under the U.C.C.). The record here shows, however, that King withdrew funds from its account immediately.

In its agreement with King, First Commercial had a right to recourse, by holding King's accounts and attaching King's property and demanding repayment. This is not provisional payment. A bank gives value when money is *actually* paid. *Trail Leasing, Inc. v. Drovers First American Bank*, 447 N.W.2d 190, 191–92 (Minn.1989). This is distinguished from when credit is given to an account but the customer is not allowed to draw on the funds until the instrument has been approved. *Id.* This is not giving value. *Id.* First Commercial paid King by crediting its account with funds which King could immediately withdraw. We hold this is value.

### Good Faith

■ Menard contends First Commercial showed lack of good faith. Good faith is "honesty in fact in the conduct or transaction concerned." Minn.Stat. § 336.1–201(19). Menard argues First Commercial did not follow its regular practices and procedures by not requiring King to completely fill out letter of credit applications. This indicates, Menard argues, that the drafts were accepted outside of the regular course of business. However, the deposition of Jia–McChen, branch man-

ager of First Commercial, shows unequivocally that the bank followed its regular business practice.

Menard also questions when First Commercial knew of the pending injunction. National City Bank telexed First Commercial on June 19, 1989 regarding the temporary injunction. The next day, it telexed First Commercial regarding the hearing for a preliminary injunction. On June 19, 1989, a number of drafts cleared First Commercial. The record reflects that the telex did not reach them until June 20, 1989 because of time differences. This evidence appears to be dispositive.

We find there is no question of fact, and Menard fails to show First Commercial lacked good faith in this transaction.

### Notice

A person has notice of a fact when he has actual *knowledge* of it, has received *notice* of it or under all the circumstances *has reason to know* it. Minn.Stat. § 336.1–201(25). A purchaser is deemed to have notice if the instrument is so incomplete or irregular that its validity is called into question. Minn.Stat. § 336.3–304.

In order to determine notice, we look at First Commercial's information and its behavior. As discussed above, First Commercial honored King's drafts on June 19, 1989. It was not until the next day, June 20, 1989, that First Commercial received notice from National City of the injunction.

Menard also asserts that, because First Commercial and King officed in the same building, First Commercial must have known of the shortage of goods. This is speculation unsupported by the record. First Commercial did not have notice before it honored King's drafts.

We find the trial court properly found First Commercial to be a holder in due course and to be entitled to payment under the letters of credit as a matter of law. Because First Commercial is a holder in due course, the trial court correctly dissolved the injunction under Minn.Stat. § 336.5–114(2)(b).

2. Menard also opposes summary judgment on the ground there was insufficient time for discovery. If a party cannot present facts essential to his case, the court *may* order a continuance to enable further discovery. Minn.R.Civ.P. 56.06.

Here, the trial court granted Menard a six-week continuance for discovery when Menard asked for six months. During that time Menard conducted its discovery in Taiwan and did not produce any third-party witnesses. At a later hearing, Menard requested more time. The trial court granted two more weeks of discovery. The summary judgment hearing was held on June 6, 1990. Menard did not request time for additional discovery and implied its discovery was complete. Menard asserted to the trial court that

> prior to conducting depositions in Taipei, we did have a lack of facts on which to attempt to defeat this current motion for summary judgment but, having been there and having taken depositions, we have learned what we believe to be facts which are in dispute and which reasonable minds could differ, and which would require that this summary judgment motion be denied.

Menard presented no additional facts, third-party affidavits or depositions. Menard's depositions were of four current or former employees, which did not show factual disputes, only that Menard differed in its interpretation of the law from First Commercial. There is no evidence more time would have produced more relevant information. We hold the trial court did not abuse its discretion and gave Menard adequate discovery time.

3. The trial court did not abuse its discretion when it denied First Commercial's request for attorney fees. *See Wolf v. State Farm Ins. Co.*, 450 N.W.2d 359, 361 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 16, 1990). First Commercial filed a notice of review maintaining that, because it is so clear it is a holder in due course, it is entitled to attorney fees. We find the trial court did not abuse its discre-

tion under Minn.Stat. § 549.21, subd. 2 (1988).

The motion of First Commercial to strike portions of Menard's brief is denied.

## DECISION

The trial court did not err by granting First Commercial summary judgment and dissolving the injunction. It did not abuse its discretion in regard to discovery and denial of attorney fees.

Affirmed.