**CROSSROADS BANK OF GEORGIA,**
Respondent,

v.

**STATE BANK OF SPRINGFIELD,**
Appellant.

No. C8–90–2726.

Court of Appeals of Minnesota.

Aug. 20, 1991.

William M. Schade, Somsen, Dempsey & Schade, New Ulm, for respondent.

J. Brian O'Leary, O'Leary & Moritz, Chartered, Springfield, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and NORTON, JJ.

## OPINION

FOLEY, Judge.

State Bank of Springfield appeals from a grant of summary judgment entered against it for refusing to honor a letter of credit. We affirm.

## FACTS

Respondent Crossroads Bank of Georgia contracted with a Georgia corporation in July 1989 for a loan that was partially secured by an irrevocable letter of credit for $50,000. Springfield issued the letter of credit on behalf of its customer, the Georgia corporation. "A 'customer' is a buyer or other person who causes an issuer to issue a letter of credit." Minn.Stat. § 336.5–103(1)(g) (1988). Before Crossroads could draw on the letter of credit, it had to present a draft to Springfield and satisfy the following requirements:

The Draft presented [by Crossroads] must bear the clause "Drawn under Letter of Credit # 303816 of the State Bank of Springfield, dated July 31, 1989" and be presented within ten days prior to the expiration date, and be accompanied by the following documentation.

1. A signed statement by a duly authorized officer certifying that the amount of this draft presented represents the amount due and unpaid.

2. The matured, promissory note properly endorsed in favor of the State Bank of Springfield.

3. Any and all other documentation executed evidencing this obligation.

Crossroads attempted to invoke the letter of credit by sending a draft and certain documentation to Springfield, but Springfield refused to honor Crossroads' attempt to draw on the credit. Crossroads' president and legal counsel then traveled to Springfield to present the customer's loan file for inspection. When Crossroads' representatives arrived, they met with the chairman of Springfield's board of directors. The chairman declined to act and allegedly told the Crossroads' representatives he would inform them if further documentation was required. Springfield did not photocopy any of the loan file, request any additional documentation, or request a follow-up meeting to discuss other documents needed to honor the letter of credit. Springfield has never specified what additional documents it requires.

The trial court found there were no genuine issues of material fact and ruled that Crossroads had complied with all the letter of credit requirements. The trial court therefore granted Crossroads' motion for summary judgment against Springfield for $50,000 plus interest.

### ISSUE

Are there any genuine issues of material fact concerning Crossroads' compliance with the terms of the letter of credit?

### ANALYSIS

On appeal from an order granting summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). "The party moving for summary judgment * * * must demonstrate that no genuine issue of material fact ex-

ists." *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988). When the moving party makes out a prima facie case, however, the burden of producing facts that raise a genuine issue shifts to the non-moving party. *Id.;* see Minn.R.Civ.P. 56.05. Summary judgment is appropriate against a party who fails to present specific facts showing there is a genuine issue for trial. *Thiele*, 425 N.W.2d at 583; see Minn.R.Civ.P. 56.-05.

The letter of credit issued by Springfield required Crossroads to present a documentary draft for payment. Therefore, the credit is within the scope of Article 5 of the Uniform Commercial Code. *See* Minn.Stat. § 336.5–102(1)(a) (1988); see also *Shaffer v. Brooklyn Park Garden Apartments*, 311 Minn. 452, 454 n. 1, 250 N.W.2d 172, 175 n. 1 (1977). Under Article 5

> an issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract * * * between the customer and the beneficiary.

Minn.Stat. § 336.5–114(1) (1988). "An 'issuer' is a bank or other person issuing a credit." Minn.Stat. § 336.5–103(1)(c) (1988). "A 'beneficiary' * * * is a person who is entitled under its terms to draw or demand payment." Minn.Stat. § 336.5–103(1)(d) (1988). Moreover, the issuer is not excused from honoring a draft or demand based on

> an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.

Minn.Stat. § 336.5–114(1) (1988).

An issuer's duty to honor drafts presented for payment depends only on the terms and conditions of the letter of credit and not on the underlying agreements providing for issuance of the letter of credit. *Shaffer*, 311 Minn. at 461–62, 250 N.W.2d at 178–79. As we said earlier this year:

> Letters of credit are independent and separate from the underlying contractual relationship. The issuer's obligation is

independent of the existence or nonexistence of an obligation of the customer to the beneficiary. *Menard, Inc. v. King De Son, Co.*, 467 N.W.2d 34, 36 (Minn.App.1991); *see* Minn. Stat. § 336.5–109(1)(a) (1988); *see also* Minn.Stat.Ann. § 336.5–114 Minnesota Code comment, Uniform Commercial Code comment 1 (West 1966). Thus, when the documentary drafts facially appear to comply with the letter of credit, the issuer must honor the draft. *See Menard*, 467 N.W.2d at 37; Minn.Stat. § 336.5–114. By conditioning payment solely upon the terms set forth in the letter of credit, an issuing bank's justifications for refusing to honor the credit are severely restricted, thereby assuring the reliability of letters of credit as a payment mechanism. *Voest–Alpine Int'l Corp. v. Chase Manhattan Bank*, 707 F.2d 680, 682 (2d Cir.1983). Because the great utility of letters of credit arises from the independent obligation of the issuing bank, attempts to avoid payment premised on extrinsic considerations tend to compromise their chief virtue of predictable reliability. *Id.*

■ In this case, Springfield issued an irrevocable letter of credit which contained several conditions for payment. Springfield maintains Crossroads did not comply with one of the conditions of payment, claiming there is a fact issue as to whether Crossroads provided "[a]ny and all other documentation executed evidencing this obligation." Springfield alleges the parties agreed Crossroads would present documentation to Springfield's president in Minneapolis rather than in Springfield at a time when Crossroads knew Springfield's president was waiting in Minneapolis. Springfield further claims its president was the only one familiar enough with the file to determine the sufficiency of the documentation.

■ The letter of credit, however, required Crossroads to present its draft to the State Bank of Springfield in Springfield, Minnesota. In addition, Springfield has never specified what documents are not satisfactory or what additional documentation it requires. Crossroads provided all the documentation it had regarding the obligation between Crossroads and the customer. Even if the parties were supposed to meet in Minneapolis, Crossroads did provide the documentation as required under the letter of credit, and Springfield failed to raise any defenses under Article 5 that would justify dishonor. Springfield does not show Crossroads failed to fulfill the letter of credit requirements. When a beneficiary provides documents complying with the presentation requirements and all terms of the letter of credit have been satisfied, the issuer must honor the drafts presented for payment. *See Shaffer*, 311 Minn. at 462, 250 N.W.2d at 179.

■ Springfield also asserts there are material fact questions about the validity of the underlying agreement between Crossroads and the customer. Springfield raises questions about collateral from which Crossroads could recover its loan proceeds before drawing on the letter of credit and whether the customer is a legal entity against which a debt could be enforced. However, the letter of credit contains the conditions Crossroads must fulfill in order to draw on the credit. Springfield itself drafted the letter of credit and could have required Crossroads to pursue other collateral before invoking the credit. Without such a requirement, the existence of collateral is not material to the issue of Crossroads' compliance with the letter of credit's conditions.

This analysis applies with equal force to the alleged issues of the customer's status as a corporation. Crossroads introduced an unrebutted exhibit from the Georgia Secretary of State showing the customer was a valid corporation when it contracted with Crossroads. Springfield's obligation to pay under the letter of credit is entirely independent of the underlying transaction. *See Menard*, 467 N.W.2d at 36. Springfield's appeal borders on the frivolous. Once Crossroads fulfilled the letter of credit's requirements, Springfield had a duty to honor the draft within three days. *See* Minn.Stat. § 336.5–112(1) (1988). Failure to honor the draft within the statutory time limit without justification constitutes

wrongful dishonor of the draft and the credit. *See id.*

### DECISION

Springfield's arguments about the meeting place, collateral, and the customer's corporate status do not raise genuine issues of material fact. Crossroads met the letter of credit's requirements, and Springfield's failure to honor the draft constituted wrongful dishonor. Accordingly, the trial court did not err in granting summary judgment against Springfield.

Affirmed.